| | | |
|---|---|---|
| **STANISLAW JAGLA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **No. 05 C 5422** |
| | ) | |
| **HARRIS BANK,** | ) | **Judge Rebecca R. Pallmeyer** |
| | ) | |
| **Defendant.** | ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff Stanislaw Jagla claims Defendant Harris Bank turned down his applications for two professional positions on the basis of Jagla's age, 43. After a period of discovery, Harris Bank moved for summary judgment. For the reasons set forth here, the motion is granted.

### FACTS

Although Harris Bank served the appropriate written notice to Jagla, a *pro se* litigant, he did not respond to the statements contained within Harris Bank's Statement of Undisputed Material Facts (hereinafter, "Harris 56.1") in the manner set forth in the court's Local Rule 56.1. The court has nevertheless reviewed the evidentiary materials attached to Mr. Jagla's response to the motion and considers that evidentiary material in the light most favorable to him. The record supports the following findings:

**Plaintiff's Education and Experience**

Plaintiff was born in Poland on April 9, 1962, and immigrated to this country in 1987. (Harris 56.1 ¶¶ 2, 3, citing Jagla Dep. at 7, 30, 36.) In 1996, Jagla graduated from Northeastern Illinois University, where he studied economics and finance. (Harris 56.1 ¶¶ 4, 5, citing Jagla Dep. at 39-40.) He enrolled in a master's program at the Illinois Institute of Technology a year later and, although he did not earn a degree there, he studied financial markets and trading for several quarters. (*Id.* ¶ 6, citing Jagla Dep. at 41-42.) Plaintiff has no professional certifications in the financial institutions industry, but he does have a commercial driver's license. (Harris 56.1 ¶ 7,

citing Jagla Dep. at 43-44.)

Jagla worked part-time as an office security guard during his college years. (Harris 56.1 ¶ 8, citing Jagla Dep. at 88-89.) His first full-time job after college graduation was as a personal banker at LaSalle Bank. (Harris 56.1 ¶ 9, citing Jagla Dep. at 74-75.) After three years in that position, and at least one promotion, Plaintiff took a three-month leave in connection with the birth of twin children, but did not return to the job in February 2000 as scheduled. (Harris 56.1 ¶¶ 10-12, citing Jagla Dep. at 82-83.) Instead, he chose to work full-time in his own business, a delivery service. (Harris 56.1 ¶ 13, citing Jagla Dep. at 70-71, 83-84.) That business was unsuccessful, and in 2001, Plaintiff took a position as an over-the-road driver for Schneider Trucking. (Harris 56.1 ¶¶ 14-15, citing Jagla Dep. at 71-74.) He left that job and, in January 2002, begin working for International Profit Associates, selling consulting services for small businesses. (Harris 56.1 ¶ 16, citing Jagla Dep. at 61-62.) That job lasted just five months. (Harris 56.1 ¶ 16, citing Jagla Dep. at 61-65, 67.) Beginning in March 2002, Plaintiff took a position as a full-time security guard in a suburban office building, where he remains employed at $9.99 per hour. (Harris 56.1 ¶ 17, citing Jagla Dep. at 54-60.)

**Applications for Positions at Harris Bank**

This litigation arises from Plaintiff's applications for positions with Harris Bank. First, on February 25, 2005, Plaintiff submitted an on-line application for a position with Harris Bank as a Credit Associate. (Harris 56.1 ¶ 18, citing Jagla Dep. at 100-103.) The job description for that position, which Plaintiff printed from the Harris website, required formal credit training and 2-1/2 to five years of credit experience. (Harris 56.1 ¶ 19, citing Jagla Dep. Ex. 2, Doc. P0022.) Plaintiff's application listed his employment experience; in a questionnaire, Plaintiff acknowledged he had no experience with credit analysis, no formal bank credit training, no accounting experience, and no experience reviewing or analyzing the credit of companies of $1 million in value. (Harris 56.1 ¶ 20, citing Jagla Dep. at 106-08; Jagla Dep. Ex. 3, Doc. HB0291). Plaintiff testified, in fact, that he had

never analyzed the creditworthiness of a company of any size. (Harris 56.1 ¶ 20, citing Jagla Dep. at 109.) Nancy Michaelson, a recruiter with a personnel service retained by Harris, concluded that Plaintiff was not qualified for the position. (Harris 56.1 ¶ 21, citing Michaelson Aff. ¶¶ 1-3.) Donny Pittman, Jr., age 35, one of four other applicants, was selected for the job. (Harris 56.1 ¶¶ 23, 24.) Mr. Pittman had worked as a Credit Analyst with Harris since 2002 and before that had experience performing credit analysis for BankFinancial FSB and for Solo Cup Company. (Harris 56.1 ¶ 24, citing Michaelson Aff. ¶ 4; Pittman application, Ex. 6 to Harris 56.1, Doc. No. HB0257-0266.) Pittman did not participate in the Harris Bank college training program. (Def.'s Responses to Interrogatories, Ex. 5 to Harris 56.1.)

On March 10, 2005, Plaintiff submitted a second on-line application, this one for a position as "Associate, Corporate and Investment Banking." (Harris 56.1 ¶ 25, citing Jagla Dep. at 111-12.) The job description called for one year of investment banking experience at the analyst or associate level. (Job Description, Jagla Dep. Ex. 4, Doc. No. P0027.) Plaintiff lacked such experience. (Harris 56.1 ¶ 26, citing Jagla Dep. at 113-15.) Jim Gasper, the recruiter, concluded that Plaintiff was not qualified for the position. (Harris 56.1 ¶ 28, citing Gasper Aff. ¶¶ 1-3.) Eric D. Reuther, age 29, one of fourteen applicants for this position, was chosen for the position. (Harris 56.1 ¶¶ 30, 31, citing Gasper Aff. ¶ 4.) Mr. Reuther had an MBA from the University of Chicago, had corporate and investment banking experience with Wachovia Securities, and had spent three years at Bank One Corporation, where he received formal training and worked in its mergers and acquisitions group. (Harris 56.1 ¶ 31, citing Gasper Aff. ¶ 4, Reuther application, Ex. 7 to Harris 56.1, Doc. No. HB 0267-0278.) Like Pittman, Reuther did not participate in the Harris Bank college training program. (Def.'s Responses to Interrogatories, Ex. 5 to Harris 56.1.)

Plaintiff's third application, also submitted on-line on March 10, was for the position of Personal Banker. (Harris 56.1, ¶ 32, citing Jagla Dep. at 122.) Harris's recruiter, Sherie Walker, notified him on March 30, 2005 that the job posting had been closed or cancelled. (Harris 56.1

¶ 34, citing Jagla Dep. at 122.)  In his response to Harris's motion for summary judgment, Plaintiff has withdrawn any claim regarding Harris's failure to hire him for the Personal Banker position. (Plaintiff's Opposition to Defendant's Summary Judgment Motion, [hereinafter, "Pl. Opp."] at 1, ¶ 2.)

There is no evidence that any of the three recruiters who considered Plaintiff's applications was aware of his age.  Plaintiff has never met any of them and has no reason to believe they had any animus against him.  (Harris 56.1 ¶ 35, citing Jagla Dep. at 136-37.)

### DISCUSSION

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The court construes the facts and draws all reasonable inferences in the light most favorable to the party opposing summary judgment.  *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004).

**Disparate Treatment Claim**

The Age Discrimination in Employment Act prohibits an employer from failing to hire an employee on the basis of his age.  29 U.S.C. § 623(a)(1).  To succeed on a disparate treatment theory, an ADEA plaintiff must show that his age played a role in decision-making process, and may do so using either the direct or indirect method of proof.  *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1060 (7th Cir. 2003).  The direct method requires "direct or circumstantial evidence"–that is, either what amounts to an admission by the decision-maker that the decision was based upon age, or a "convincing mosaic" of evidence, such as suspicious timing, ambiguous statements, or behavior or comments that reflect age bias.  *See Walker v. Bd. of Regents of the Univ. of Wisconsin Sys.,* 410 F.3d 387, 394 (7th Cir. 2005), cited in *Lawhead v. Ceridian Corp.*, ___ F. Supp. 2d ___, 2006 WL 3431917, *4 (N.D. Ill. 2006).  No such evidence has been presented here.

Nor has Plaintiff established his failure-to-hire claim under the indirect method.  To do so,

Plaintiff must show (1) that he was a member of the protected age group (forty or older); (2) that he applied for and was qualified for the position he sought; (3) that he did not receive the position; and (4) that those hired in his stead were not in the protected group and were no more qualified than he. *Zaccagnini v. Charles Levy Circulating Co.,* 338 F.3d 672, 675 (7th Cir. 2003). As described above, the facts here are essentially undisputed: Plaintiff applied on line for two banking positions, but was rejected for each of them on the ground that he lacked required experience. Plaintiff effectively concedes that he lacks the stated qualifications for the positions he sought, a concession that defeats any effort to establish disparate treatment under the indirect method.

**Disparate Impact Claim**

In his response to Defendant's motion for summary judgment, Plaintiff nevertheless argues that Harris's practices discriminate on the basis of age because the posted positions require professional experience that Harris makes available only to "very young applicants" or "recent college graduates from the few preferred colleges." (Pl. Opp. at 4, 6.) Plaintiff contends this case presents a "simple question of law": "Is it legal to exclude members of the protected group form [sic] the entry-level trainings and then use it against them as a Mandatory prior experience and Formal industry training required as exhibited by the both disputed positions"? (*Id.* at 9.) In Plaintiff's view, Harris's practices for filling professional positions have a disparate impact on older workers. He asserts that Harris never posts entry-level positions that "do not require any prior industry experience" because such positions are "RESERVED for preferred very young applicants." (*Id.* at 4, emphasis original.)

Harris objects to any consideration of a claim of disparate impact. Harris argues, first, that any such claim is beyond the scope of Plaintiff's underlying EEOC charge. Harris is correct: *See Diersen v. Walker*, 117 Fed. Appx. 463, 465-66 (7th Cir. 2004) (Table, text in WESTLAW) (disparate impact claim is "conceptually and factually distinct" from disparate treatment claim asserted in EEOC charge), citing *Noreuil v. Peabody Coal Co.*, 96 F.3d 254, 258 (7th Cir. 1996)

(disparate impact age discrimination claim is not "like or reasonably related" to claim of retaliatory discharge in violation of ADEA). The proof of these two types of claims is in fact quite different. A claim of disparate treatment focuses on the employer's intent with respect to a particular employee's age, race, gender, or disability, whereas a claim of disparate impact focuses on whether an employer's particular employment practice has a disproportionately negative effect on members of the employee's protected class as a whole.

Even if a disparate impact claim were properly before the court, Harris argues, Plaintiff could not prevail on this motion. Again, the court agrees. In the very case in which the Supreme Court recognized the application of the disparate impact theory to establish age discrimination, *Smith v. City of Jackson*, 544 U.S. 228 (2005), the Court observed that an employee pursuing such a theory must do more than "simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact." *Id.* at 241. Instead, the employee must isolate and identify "the specific employment practices that are allegedly responsible for any observed statistical disparities." *Id.*, quoting *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 656 (1989).

Plaintiff has made no real effort to meet any of those tests. At best, he has pointed to a "generalized policy"–Harris's purported preference for recent college graduates in entry-level positions–that he believes has a disparate impact on older workers. But he has not offered evidence even of such a generalized policy; the only materials he cites in support of the disparate impact claim is Harris's answer to the complaint, in which Harris flatly denies that any such policy exists. In contrast, *Quinn v. New York State Elec. and Gas Corp.*, 569 F. Supp. 655 (N.D. N.Y. 1983), on which Plaintiff relies, involved a training program for which persons over the age of 32 were explicitly ineligible.

Plaintiff asserts that Harris never posts entry-level positions on line, but there is no evidence that this is the case–not even an assertion from Plaintiff that he has not observed such a posting. Plaintiff has submitted copies of brochures describing Harris's "Business Banking Development

Program," but nothing in those materials suggests that the Program is open only to recent college graduates or that older persons with college degrees are somehow ineligible. To the contrary, one of the stated admissions requirements is "Proven leadership qualities developed through activities at school, work or in the community." (Business Banking Development Program brochure, Ex. E to Pl. Opp.) Significantly, as Harris observes, Jagla has not even shown that he himself was excluded from Harris's development or training programs, as there is no evidence that he ever applied for such training. Nor has Jagla established that the fact that he did not participate in Harris's training program was the reason he did not get the positions for which he applied; the two successful applicants, Donny Pittman and Eric Reuther, also did not participate in those programs. In any event, there is no evidence of any "statistical disparities." There is no statistical evidence of any kind in the record, and absolutely no basis on which the court could conclude that entry-level positions are disproportionately filled with younger workers.

## CONCLUSION

Plaintiff did not have the qualifications for the positions he sought and therefore has not made a showing that he was subject to disparate treatment on the basis of his age. His disparate impact claim is barred as beyond the scope of his underlying EEOC charge and fails on its merits. Defendant's motion for summary judgment (59) is granted.

ENTER:

Dated: February 2, 2007

_____
REBECCA R. PALLMEYER
United States District Judge